AO 93 (Rev. 12/09) Search and Seizure Warrant (USAO CDCA Rev. 01/2013)

# UNITED STATES DISTRICT COURT
for the
Central District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
Premises *or identify the person by name and address)* ) Case No. **15-1762M**
~~PREMESIS~~ KNOWN AS 710 3RD STREET, APARTMENT )
4, HERMOSA BEACH, CALIFORNIA, AS FURTHER )
DESCRIBED AS ATTACHMENT A )

## SEARCH AND SEIZURE WARRANT

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search of the following person or property located in the   Central   District of   California  
*(identify the person or describe the property to be searched and give its location):*

Premises   ~~PREMESIS~~ KNOWN AS 710 3RD STREET, APARTMENT 4, HERMOSA BEACH, CALIFORNIA, AS FURTHER DESCRIBED AS ATTACHMENT A.

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized):*
SEE ATTACHMENT B.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property.

**YOU ARE COMMANDED** to execute this warrant on or before   14 days from the date of its issuance  
*(not to exceed 14 days)*

☒ in the daytime 6:00 a.m. to 10 p.m. ☐ at any time in the day or night as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to United States Magistrate Judge on duty at the time of the return through a filing with the Clerk's Office.
*(name)*

☐ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)* ☐ for _____ days *(not to exceed 30)*.
☐ until, the facts justifying, the later specific date of _____.

Date and time issued: 9/22/15 at 10:29am        **JACQUELINE CHOOLJIAN**
                                                                       *Judge's signature*

City and state:   Los Angeles, California           Hon. Jacqueline Chooljian, U.S. Magistrate Judge
                                                                       *Printed name and title*

AUSAs: Valerie L. Makarewicz/James C. Hughes

*AO 93 (Rev. 12/09) Search and Seizure Warrant (Page 2)*

| Return |||
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
| Inventory made in the presence of : |||
| *Inventory of the property taken and name of any person(s) seized:* <br> [Please provide a description that would be sufficient to demonstrate that the items seized fall within the items authorized to be seized pursuant to the warrant (e.g., type of documents, as opposed to "miscellaneous documents") as well as the approximate volume of any documents seized (e.g., number of boxes). If reference is made to an attached description of property, specify the number of pages to the attachment and any case number appearing thereon.] |||

***Certification*** (by officer present during the execution of the warrant)

*I declare under penalty of perjury that I am an officer who executed this warrant and that this inventory is correct and was returned along with the original warrant to the designated judge through a filing with the Clerk's Office.*

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

AUSAs: Valerie L. Makarewicz/James C. Hughes

**ATTACHMENT A**

PREMISES TO BE SEARCHED

The SUBJECT LOCATION is located in a beige, multi-occupant, two-level residential building, located at 710 3rd Street, Apartment 4, Hermosa Beach, CA. The SUBJECT LOCATION is on the south side of 3rd Street, with the building facing north to south. The SUBJECT LOCATION has a brown roof with green/bluish trim. The SUBJECT LOCATION is on 3rd Street between Pacific Coast Highway ("PCH") and Ardmore Avenue. There are 4 units at the SUBJECT LOCATION.

At the north side of SUBJECT LOCATION are three one-car garages. Above the three one-car garages on the north side of the SUBJECT LOCATION are the house numbers "710." Above the three one-car garages, on the second floor of the north face of the building, is the SUBJECT LOCATION. Above the three one-car garages on the north side of the building is a porch of the SUBJECT LOCATION, which is accessed by two sliding glass doors. There is a small window located between the two sliding doors on the balcony of the SUBJECT LOCATION on the north side of the building.

The "front door" entrance to the SUBJECT LOCATION is found by walking to the east side of the building, walking up a flight of stairs to a landing, where, on the right (north) side of the landing is a blue door demarcated with a unit number "4" on the

left side of the door frame. The "back door" entrance to the SUBJECT LOCATION is found by walking to the west side of the building, walking up a flight of stairs to a landing, and at the top of the landing, turning left to an unmarked blue door.

Below is a picture of the SUBJECT LOCATION from Google Maps:



**ATTACHMENT B**

**ITEMS TO BE SEIZED**

1. Based on the foregoing, I respectfully ~~submit that~~ the items to be seized are the following records, documents, and other items of Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, for the period January 1, 2013 through the present:

   a. Any and all documents resembling or purporting to be an instrument for the payment and/or collateralization of any debt, money orders, coupons, bonds, and bank checks.

   b. Any and all tax returns, IRS Forms 1040, 1040A, 1040X, 1040EX, 1065, 1120 and electronically-filed versions of the same, tax schedules, copies of tax returns, and documents generated for the preparation of tax returns for Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton).

   c. Any and all tax returns, IRS Forms 1040, 1040A, 1040X, 1040EX, 1065, 1120 and electronically-filed versions of the same, tax schedules, copies of tax returns, and documents

generated for the preparation of tax returns for any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), including Heaven & Earth LLC, and any cat breeding business.

   d. Any and all documents resembling or purporting to be commercial filings made in accordance with the Uniform Commercial Code and any and all documents resembling or purporting to be UCC Financing Statements.

   e. Any and all ledgers, account books, inventory records, profit or income statements, and expenses or loss statements for Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, and any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

   f. Any and all bank account records including account applications, signature cards, bank statements, records reflecting dates and amounts of deposits, withdrawals, interest memos, debit memos and credit memos, deposit slips, records reflecting the identity of checks deposited, withdrawal slips, records disclosing the disposition of withdrawals, wire

transfers, and wire instructions in the name of Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, and any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

    g.    Any and all investment documents including company prospectus, company profiles, trade confirmations, asset statements, gain/loss statements, records detailing capital contributions, capital withdrawals, and dividend payments in the name of Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

    h.    Any and all originals and/or copies of any invoices, bills, or receipts related to the purchase of electronic equipment, office supplies, and/or stationary by Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann

Morton), Heaven & Earth LLC, and any cat breeding business, or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  i. Any and all originals and/or copies of any invoices, bills, or receipts from any County Recorder, Secretary of State, or Court Clerk.

  j. Any and all IRS publications, regulations, and/or copies of IRS forms and documents; extracts from the Internal Revenue Code; and any correspondence relating to IRS forms, Internal Revenue Statutes or regulations and tax schedules.

  k. Any and all records, documents, programs, applications, or materials identifying customers, including client files, client listings, correspondence, telephone books, business cards, notes and other client information, by Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, and any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  l. Any and all invoices, checks, money orders,

receipts, ledgers, schedules, and other records relating to consulting fees, fees for the preparation of financial instruments and UCC filings, cat breeding, and other income received, by Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  m. Any and all contracts entered into, leases and rental agreements entered into, and vendor invoices relating to the operation of, Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  n. Any and all corporate minutes, stock registers, other records reflecting ownership of stock relating to Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, or

any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

    o.    Any and all loan applications in the name of Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

    p.    Any and all questionnaires and any related records, documents, programs, applications, or materials outlining information needed to complete the preparation of any financial instruments, UCC filings, or any tax returns incorporating such documents, including any and all records establishing income, expenses, and outstanding liabilities, as well as records related to assets of Sean Morton and Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business and any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson,

a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  q. Any and all records, documents, programs, applications, or materials evidencing client financial relationships with Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, and any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  r. Any and all accounting records, specifically financial statements, ledgers, journals, check registers, notes, correspondence and other books and records of Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, or any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business.

  s. Any and all originals and/or copies of any documents resembling or purporting to be legal pleadings, legal motions, and/or other court filings.

   t. Cash, if the amount recovered is in excess of $5,000.

   u. Correspondence and notes, in both electronic (e-mail) and physical form by and between Sean Morton, Melissa Morton, Heaven & Earth LLC, any dog walking business, and any cat breeding business, and/or any third party, and any business related to Sean Morton, Melissa Morton (a.k.a. Melissa Thomson Morton, a.k.a. Melissa Thomson, a.k.a. Melissa Ann Thomson, a.k.a. Melissa Ann Morton), Heaven & Earth LLC, and any cat breeding business, and/or any third party.

   v. Any digital device used to facilitate the above-listed violations of the abovementioned crimes and forensic copies thereof.

   w. With respect to digital devices used to facilitate the above-listed violations or containing evidence falling within the scope of the foregoing categories of items to be seized:

     i. evidence of who used, owned, or controlled the device during the time period of January 1, 2013 through the present, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, e-mail, e-mail contacts, chat and instant messaging logs, photographs, and correspondence;

INSTRUMENTALITY PROTOCOL                 x

      ii.     evidence of the presence or absence of software that would allow others to control the device, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

      iii.     evidence of the attachment of other devices;

      iv.     evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the device;

      v.     evidence of the times the device was used;

      vi.     passwords, encryption keys, and other access devices that may be necessary to access the device;

      vii.     applications, utility programs, compilers, interpreters, or other software, as well as documentation and manuals, that may be necessary to access the device or to conduct a forensic examination of it;

      viii.     records of or information about Internet Protocol addresses used by the device;

      ix.     records of or information about the device's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses.

    2.    As used herein, the terms "records," "documents,"

"programs," "applications," and "materials" include records, documents, programs, applications, and materials created, modified, or stored in any form, including in digital form on any digital device and any forensic copies thereof.

    3. As used herein, the term "digital device" includes any electronic system or device capable of storing or processing data in digital form, including central processing units; desktop, laptop, notebook, and tablet computers; personal digital assistants; wireless communication devices, such as telephone paging devices, beepers, mobile telephones, and smart phones; digital cameras; peripheral input/output devices, such as keyboards, printers, scanners, plotters, monitors, and drives intended for removable media; related communications devices, such as modems, routers, cables, and connections; storage media, such as hard disk drives, floppy disks, memory cards, optical disks, and magnetic tapes used to store digital data (excluding analog tapes such as VHS); and security devices.

    4. In searching digital data stored digital devices, law enforcement personnel executing this search warrant will employ the following procedure:

    a. Law enforcement personnel or other individuals assisting law enforcement personnel (the "search team") will, in their discretion, either search the digital device(s) on-site or seize and transport the device(s) to an appropriate law

INSTRUMENTALITY PROTOCOL                                          xii

enforcement laboratory or similar facility to be searched at that location. The search team shall complete the search as soon as is practicable but not to exceed 60 days from the date of execution of the warrant. If additional time is needed, the government may seek an extension of this time period from the Court on or before the date by which the search was to have been completed.

        b. The team searching the digital devices will do so only by using search protocols specifically chosen to identify only the specific items to be seized under this warrant.

        c. The team may subject all of the data contained in the digital device capable of containing items to be seized as specified in this warrant to the protocols to determine whether the digital device and any data falls within the items to be seized as set forth herein. The team searching the digital device may also search for and attempt to recover "deleted," "hidden" or encrypted data to determine, pursuant to the protocols, whether the data falls within the list of items to be seized as set forth herein.

        d. The team searching the digital device also may use tools to exclude normal operating system files and standard third-party software that do not need to be searched.

        e. The search team may also use sophisticated hashing tools including "EnCase" and "FTK" (Forensic Tool Kit).

INSTRUMENTALITY PROTOCOL                                               xiii

f.  When searching a digital device pursuant to the specific protocols selected, the team searching the digital device shall make and retain notes regarding how the search was conducted pursuant to the selected protocols.

g.  If the team searching a digital device pursuant to the selected protocols encounters immediately apparent contraband or other evidence of a crime outside the scope of the items to be seized, the team shall immediately discontinue its search of that digital device pending further order of the Court and shall make and retain notes detailing how the contraband or other evidence of a crime was encountered, including how it was immediately apparent contraband or evidence of a crime.

h.  If the search determines that a digital device does not contain any data falling within the list of items to be seized pursuant to this warrant, the government will as soon as practicable return the device and delete or destroy all the forensic copies thereof.

i.  If the search determines that a digital device does contain data falling within the list of items to be seized, the government may make and retain copies of such data, and may access such data at any time.

j.  If the search determines that a digital device is (1) itself an item to be seized and/or (2) contains data falling within the list of items to be seized, the government may retain

INSTRUMENTALITY PROTOCOL                                              xiv

forensic copies of the digital device but may not access them (after the time for searching the device has expired) absent further court order.

  k. The government may retain a digital device itself until further order of the Court or one year after the conclusion of the criminal investigation or case (whichever is latest), only if the device is determined to be an instrumentality of an offense under investigation or the government, within 14 days following the time period authorized by the Court for completing the search, obtains an order from the Court authorizing retention of the device (or while an application for such an order is pending). Otherwise, the government must return the device.

  l. Notwithstanding the above, after the completion of the search of the digital devices, the government shall not access digital data falling outside the scope of the items to be seized absent further order of the Court.

  5. In order to search for data that is capable of being read or interpreted by a digital device, law enforcement personnel are authorized to seize the following items, subject to the procedures set forth above:

  a. Any digital device capable of being used to commit, further or store evidence of the offense(s) listed above;

INSTRUMENTALITY PROTOCOL              xv

b.  Any equipment used to facilitate the transmission, creation, display, encoding or storage of digital data, including word processing equipment, modems, docking stations, monitors, printers, plotters, encryption devices and optical scanners;

c.  Any magnetic, electronic or optical storage device capable of storing data, such as floppy disks, hard disks, tapes, CD-ROMs, CD-R, CD-RWs, DVDs, optical disks, printer or memory buffers, smart cards, PC cards, memory calculators, electronic dialers, electronic notebooks, cellular telephones and personal digital assistants;

d.  Any documentation, operating logs and reference manuals regarding the operation of the digital device or software used in the digital device;

e.  Any applications, utility programs, compilers, interpreters and other software used to facilitate direct or indirect communication with the digital device;

f.  Any physical keys, encryption devices, dongles and similar physical items that are necessary to gain access to the digital device or data stored on the digital device; and

g.  Any passwords, password files, test keys, encryption codes or other information necessary to access the digital device or data stored on the digital device.

The special procedures relating to digital media found in this

INSTRUMENTALITY PROTOCOL                                                            xvi

warrant govern only the search of digital media pursuant to the authority conferred by this warrant and do not apply to any search of digital media pursuant to any other court order.